**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDRE JACOBS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:10-cv-02622** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **DISTRICT ATTORNEY'S** | : | |
| **OFFICE, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Andre Jacobs ("Plaintiff"), an inmate currently incarcerated at the Albion State Correctional Institution in Pennsylvania ("SCI-Albion"), initiated this civil rights action on December 22, 2010, by filing a complaint pursuant to 42 U.S.C. § 1983. Presently before the Court are Defendants' motions to dismiss Plaintiff's amended complaint. (Doc. Nos. 144, 148, 155, 161.) All motions have been fully briefed and are ripe now for disposition.

I.    BACKGROUND

A.    **Procedural Background**

Plaintiff's initial complaint named over one-hundred Defendants, primarily officials and employees of the Pennsylvania Department of Corrections ("DOC"). (Doc. No. 1.) The allegations included a large number of claims that spanned Plaintiff's confinement at different state prisons in Pennsylvania,[1] beginning in November of 2008 and continuing up until the filing of this action in late December of 2010. Service of the complaint was directed, and four (4) separate groups of Defendants filed motions to dismiss. (Doc. Nos. 27, 43, 47, 59.) Plaintiff then filed a motion to amend/correct the complaint (Doc. No. 69), which this Court granted on

---

[1] Those Pennsylvania State Prisons include SCI-Fayette, located in the Western District of Pennsylvania, SCI-Dallas as well as SCI-Coal Township, which are both located in the Middle District of Pennsylvania.

September 18, 2012. (Doc. No. 76.) The Court also denied Defendants' motions to dismiss without prejudice. (Id.)

On January 22, 2013, Plaintiff filed an amended complaint. (Doc. No. 83.) Thereafter, three groups of the original Defendants filed motions to dismiss and/or strike the amended complaint as improper and in violation of the Court's September 18, 2012 Order. (Doc. Nos. 84, 87, 95.) On September 30, 2013, Defendants' motions were granted and Plaintiff's amended complaint was stricken from the record. (Doc. No. 103.) However, the Court afforded Plaintiff twenty days to submit a proper second amended complaint. (Id.)

On March 6, 2014, after the Court granted Plaintiff an enlargement of time to file a second amended complaint (Doc. Nos. 104, 105), Plaintiff submitted a proposed second amended complaint (Doc. No. 113). Defendants subsequently filed a motion to strike (Doc. No. 114), and a motion to dismiss (Doc. No. 116). On August 7, 2014, the Court granted Defendants' motion to strike the second amended complaint, denied the motion to dismiss filed by some of the other Defendants as moot, and after reviewing the factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1994), dismissed Plaintiff's original complaint for failure to prosecute and directed the Clerk to close the case. (Doc. No. 126.) Plaintiff then filed a notice of appeal on August 21, 2014. (Doc. No. 127.)

On October 17, 2014, the Court received a certified Order from the United States Court of Appeals for the Third Circuit, in lieu of a formal mandate, dismissing Plaintiff's appeal for failure to pay fees. (Doc. No. 129.) On November 23, 2015, the Third Circuit reinstated the appeal. (Doc. No. 131.) Subsequently, the Third Circuit vacated this Court's August 7, 2014 Order that dismissed Plaintiff's original complaint and remanded the case to this Court for further proceedings. The Third Circuit remanded the case to provide the Plaintiff "one more

opportunity to amend his complaint[.]" <u>Jacobs v. District Attorney of Luzerne Cnty.</u>, 659 F. App'x 107, 110 (3d Cir. 2016).

This Court then conditionally granted Plaintiff's motion for appointment of counsel and stayed the case for thirty days to afford the Chair of the Federal Bar Association's Pro Bono Committee an opportunity to locate counsel for Plaintiff. On March 6, 2017, the thirty-day period elapsed and no counsel entered an appearance on behalf of Plaintiff. Accordingly, this Court ordered Plaintiff to file an amended complaint in accordance with the directions provided to him by its Memorandum dated September 30, 2013. (Doc. No. 142.)

### B. Allegations of Amended Complaint

#### 1. Allegations Pertaining to Plaintiff's Confinement at SCI-Fayette

On April 19, 2017, Plaintiff filed an amended complaint (Doc. No. 143), again naming well over one hundred Defendants.[2] Plaintiff alleges that on November 24, 2008, he was awarded $185,000 in damages after prevailing in a civil suit against the Department of Corrections ("DOC"). (Doc. No. 143 ¶ 1.) Plaintiff therefore claims that supervisory Defendants Wetzel, Johnson, Moore-Smeal, and Varner identified him as a threat to the prison establishment and openly encouraged all other Defendants to retaliate against him. (<u>Id.</u> ¶ 4.) Specifically, Plaintiff alleges that within days of returning to SCI-Fayette from his trial, he was issued fabricated misconducts and prevented from applying for parole in retaliation for his verdict against the DOC. (<u>Id.</u> ¶ 5.) Plaintiff alleges that there was a "campaign and conspiracy"

---

[2] The Defendants consist of the following groups: (1) The Luzerne County District Attorney's Office, David Pedri, and Jacqueline Musto-Carroll; (2) Prison Health Services, Chris Meyers, Stanley Bohinski, and Brian Davis; (3) MHM Services, Inc., and Dr. Jane Jesse; and (4) The DOC Defendants. The group of DOC Defendants can be further broken down into the following sub-groups: (1) the supervisory DOC Defendants; (2) the SCI-Fayette Defendants; (3) the SCI-Dallas Defendants; and (4) the SCI-Coal Township Defendants.

set forth by these supervisory Defendants and put in place by all other Defendants to issue fabricated misconduct reports in order to thwart Plaintiff's legal actions. (Id. ¶ 7.)

Moreover, Plaintiff claims that after he had rejected the DOC's $25,000 offer to settle his previous lawsuit, Leggett approached his cell and stated to Plaintiff that he "should have accepted the settlement" from the "AG's office and Beard[,]" and that as a result, Plaintiff would be designated for confinement in punitive segregation indefinitely. (Id. ¶ 9.) Plaintiff next avers that he was formally processed to be "blacklisted for indefinite confinement in punitive segregation," which was processed by Johnson and ultimately approved by Beard. (Id. ¶ 11.) He was then allegedly placed on the Restricted Release List ("RRL"), in retaliation for prevailing in his lawsuit. (Id. ¶¶ 14, 15.)

Plaintiff maintains that as part of this conspiracy, he was issued misconduct reports for filing grievances. (Id. ¶ 17.) Specifically, he states that when he filed a grievance against Leggett, Leggett issued him a misconduct in retaliation for filing the grievance. (Id. ¶¶ 15-17.) Plaintiff subsequently appeared before Cross on Leggett's retaliatory misconduct and was denied his timely requests for evidence and witnesses at the hearing. (Id. ¶ 19.) Plaintiff alleges that when he informed Cross that Leggett's misconduct report was issued directly in response to his grievance and was therefore retaliatory, Cross made Plaintiff leave the room where Cross then called someone on the phone. (Id. ¶¶ 21-22.) When Plaintiff reentered the room, Cross allegedly stated, "you're smart but my resources say we can get around it. I'm finding you guilty and sentencing you to 60 days consecutive." (Id. ¶ 22.)

Plaintiff alleges that in furtherance of Defendants' conspiracy to retaliate against him for prevailing in his lawsuit against the DOC, Defendants Vojacek, Leggett, Collins, Beard, Johnson, Moore-Smeal, Varner, and Coleman, pressured Plaintiff into accepting a settlement and

obstructed his ability to defend against the DOC's appeal in his civil case. (Id. ¶ 28.)

Specifically, Plaintiff alleges that Defendants Vojacek, Leggett, and Collins plotted and agreed

to steal "two-thousand – plus page[s] of incoming legal packages from the law firm Lambert &

Martineau, containing work product, copies of filings intended for the court and related materials

directly for the lawsuit Plaintiff won." (Id. ¶ 29.) Plaintiff alleges that Collins approached his

cell and stated that "Leggett said you're not getting your legal mail until you sign off on the

grievances you filed against him" and then fabricated official documents to provide that

Plaintiff's legal mail was confiscated because Plaintiff "refused to sign" for it. (Id. ¶ 30.)

Plaintiff alleges that he was then transferred to SCI-Dallas to serve his RRL sanction. (Id. ¶ 33.)

### 2. Allegations Pertaining to Plaintiff's Confinement at SCI-Dallas

Plaintiff alleges that as a result of his $185,000 verdict against the DOC, Defendants

Beard, Coleman, Johnson, and Moore-Smeal intended for the "campaign of harassment and

retaliation against Plaintiff" to continue at SCI-Dallas. (Id. ¶ 35.) Within days of arriving at

SCI-Dallas, Plaintiff alleges that he, along with a number of other inmates, filed grievances

against the prison guards for the manner in which they made the prisoners quickly consume their

food. (Id. ¶ 36.) Plaintiff alleges that he was labeled as the "ring-leader" for these grievances

and told by Defendants Bliech, Robowleski, and Sgt. Buck not to file grievances and that they

specifically referenced his lawsuit. (Id. ¶ 37.) Plaintiff also alleges that these Defendants began

to deny him showers, food, and outside exercise in retaliation for his verdict against the DOC.

(Id. ¶ 38.)

Plaintiff alleges that when Defendants Zakarauckus and Miller were assigned to

investigate Plaintiff's claim that he was a target because of his verdict against the DOC, these

Defendants conspired with one another to fabricate investigative reports, destroy video footage,

and fail to interview witnesses that Plaintiff identified. (Id. ¶¶ 40, 41.) Moreover, at Plaintiff's RRL status hearing, Plaintiff alleges that Defendants Walsh, Demming, and Brittain informed Plaintiff that a condition of him being released from RRL status was that he cease filing grievances. (Id. ¶ 43.) Plaintiff further alleges that Defendant Lucas sent him a notice restricting Plaintiff from submitting any further grievances. (Id. ¶¶ 45-47.)

Plaintiff next alleges that he was visited by Human Relations Council ("HRC"), Investigator Bret Grote on September 10, 2009. (Id. ¶ 48.) Plaintiff avers that within minutes after the visit, Defendants Buck and Bliech retaliated against him by depriving him food, water and showers for "bringing HRC to the prison" and placed Plaintiff on a food diet. (Id. ¶ 48.) Plaintiff alleges that on October 29, 2009, while he was being moved to another cell and his hands were cuffed behind his back, he was assaulted by Defendants Elmore and Mccoy, and that Nurse Patty fabricated Plaintiff's medical records and reports to frame Plaintiff as the aggressor in the incident. (Id. ¶¶ 50, 51.) Plaintiff alleges that the conspiracy and campaign of retaliation continued at SCI-Dallas when Defendants Chalker and Rudaski fabricated misconduct reports against Plaintiff, and provided additional restrictions on Plaintiff's food, outside exercise, access to water and showers, mail, and grievances. (Id. ¶ 52.) Plaintiff also avers that his cell was searched more than thirty (30) times in three months, and each time it was searched, Defendants Buck, Mosier and Bliech referenced the lawsuit Plaintiff won, called him "money bags," scattered his court papers and legal filings around his cell, and destroyed documents. (Id. ¶ 53.) Plaintiff also alleges that Defendant Konycki delivered a live mouse in his meal and stated "the mouse was from Sgt. Ransom[,] was it good?" (Id. ¶ 55.)

Plaintiff further alleges that in advancement of this conspiracy against him, his outgoing mail was routinely held, stolen, destroyed, opened and/or photocopied before mailing. (Id. ¶ 56.)

For instance, Plaintiff alleges that on numerous dates, Defendants Fedor, Martin, Patterson and Zakarauckus, with the approval of Defendants Beard, Wetzel, Klopotoski, Moore-Smeal, and Walsh, conspired to and did "delay, misdirect, or destroy Plaintiff's incoming/outgoing personal/legal mail, including an 800 [plus] page incoming mailing from the law firm Lambert & Martineu containing motions, transcripts and research materials regarding the lawsuit Plaintiff won." (Id. ¶ 57.)

Plaintiff alleges that Defendants Walsh, Klopotoski, Keller, Mooney, Zakarauckus, Delbasco, Demming, Beard, Lucas, Mosier, Miller, and Patterson authorized and encouraged a murder attempt on Plaintiff in that on January 10, 2009, Defendant Patton illegally opened Plaintiff's cell door to allow Defendants Chalker and Wildes in to physically attack and attempt to kill Plaintiff. (Id. ¶¶ 59, 60.) Plaintiff avers that Defendants Chalker and Wildes grabbed and slammed him to the ground and punched him for almost five minutes, and that Defendants Mosier and Mccoy joined in on the attack. (Id. ¶¶ 60, 61.) Plaintiff states that these Defendants attempted to cover up the incident by fabricating a report that they were "saving" Plaintiff from an attempted suicide and issuing Plaintiff a fabricated misconduct. (Id. ¶¶ 61-63.) Plaintiff alleges that at the misconduct hearing, he was found guilty of assaulting an officer, and that Defendants McKeown, Mahally, Cicerchia, Leskawsky, Walsh, and MacIntyre began publishing the defamatory claim that Plaintiff assaulted a prison guard and tried to hang himself. (Id. ¶¶ 62, 63.)

Plaintiff alleges further incidents of food tampering and retaliatory misconduct reports. (Id. ¶¶ 66, 67.) Plaintiff states that in an attempt to resolve the food tampering issues and sexual/derogatory remarks by certain officers, he filed grievances which were immediately followed by retaliatory misconduct reports. (Id. ¶¶ 66-71.) Plaintiff further alleges that he was

then placed on grievance restriction for filing grievances. (Id. ¶ 71.) Plaintiff also alleges that another attack was orchestrated against him with the approval of the supervisory Defendants when Defendant Mosier excessively doused Plaintiff with O.C. spray and then beat him and administered electroshocks. (Id. ¶ 72.)

Plaintiff next alleges that in addition to the DOC Defendants, Defendants Pedri, Wilson, and Musto-Carroll conspired to conceal the abuse Plaintiff was facing at the hands of the DOC and retaliated against him by lodging fabricated criminal charges. (Id. ¶ 73.) Plaintiff then alleges that either Defendant Walsh or Wetzel contacted Defendant Varano of SCI-Coal Township to set up a transfer of Plaintiff to SCI-Coal Township as a "blacklisted RRL prisoner." (Id. ¶ 76.)

### 3. Allegations Pertaining to Plaintiff's Confinement at SCI-Coal Township

Upon Plaintiff's arrival at SCI-Coal Township, Plaintiff alleges that he was placed in a freezing cell without underclothes or linens for days based solely on Defendants Varano, Walsh, and Wetzel's conversation regarding Plaintiff and his lawsuit. (Id. ¶ 77.) Plaintiff alleges that Defendant Varano reinforced Defendants Beard, Wetzel, Coleman, Walsh, and Moore-Smeal's agenda that if Plaintiff did not cease his litigation, the abuse would continue to "deteriorate." (Id. ¶ 78.) The next day, Plaintiff alleges that Defendants Leonard and Piepzowski denied him his meal, and that a pattern of tampering with Plaintiff's meals continued, as well as the denial of outside exercise, showers, and grievances. (Id. ¶¶ 79, 80.)

Plaintiff also alleges that after he was visited by Andy Switzer, another HRC investigator, Defendants Goodwin and Kepner threatened him, denied him his meal, and then served him with a misconduct. (Id. ¶¶ 81-83.) Plaintiff alleges that the basis of the misconduct was to "conjure up the idea that Plaintiff posed a 'danger' with his legal property/ink pen," and resulted in his

placement on paper/ink pen restriction. (Id. ¶ 83.) Plaintiff alleges that as a result of his placement on paper/ink pen restriction, his misconduct hearing was held in absentia. (Id. ¶ 84.)

Plaintiff alleges that his incoming mail was continuously seized while at SCI-Coal Township. (Id. ¶¶ 85, 86.) Plaintiff also alleges that he was singled out from a group of peaceful protestors on September 23, 2010, and stripped naked and placed in a "torture chair for 18 hours straight." (Id. ¶ 90.)

Based on these allegations, Plaintiff raises claims involving: Eighth Amendment cruel and unusual punishment; Eighth Amendment conditions of confinement; malicious prosecution; defamation; Eighth Amendment denial of food, shower, and exercise; Fourth and Eighth Amendment violations regarding strip searches; Eighth Amendment food tampering; failure to take corrective actions in the grievance process; verbal threats, placement on the Restricted Release List; fabrication of misconduct reports and violations of his due process rights during disciplinary hearings; retaliation; access to the courts; and conspiracy.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. Fed.R.Civ.P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed.R.Civ.P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation specifically, the court must be mindful that a document filed pro se is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

Additionally, in order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must plead: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141–42 (3d Cir. 1990). Moreover, in addressing whether a viable claim has been stated against a defendant, the court must assess whether the plaintiff has sufficiently alleged that the defendant was personally involved in the act which the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability may not be imposed under § 1983 on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Instead, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." Capone, 868 F.2d at 106 n.7.

**B.      Civil Rights Statute, 42 U.S.C. § 1983**

In this case, Plaintiff has brought claims under 42 U.S.C. § 1983. (Doc. No. 1 at 1.) In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived

the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141–42 (3d Cir. 1990); Richardson v. Min Sec Cos., No. 3:CV-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standards of respondeat superior. Santiago, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

## III.    DISCUSSION

In response to Plaintiff's latest amended complaint, all Defendants have filed motions to dismiss. The Court will address these motions in turn.

### A.    Defendants Prison Health Services, Inc., Chris Meyers, Stanley Bohinski and Brian Davis' Motion to Dismiss

Defendants Prison Health Services, Inc. ("PHS"), Chris Meyers, Stanley Bohinski and Brian Davis filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 144), along with

a brief in support (Doc. No. 145), on April 25, 2017. While Plaintiff has filed an all-encompassing brief in opposition to all motions to dismiss (Doc. No. 166), a review of that oppositional brief does not contain any mention of the above Defendants. In their brief in support, Defendants argue that the amended complaint contains no allegations against Meyers, Davis or Bohinski, and that PHS is named only twice in the complaint: once at page three, paragraph E, providing the corporate location of PHS, and once at page four, paragraph H, identifying two purported nurses that may have been employed by PHS. (Doc. No. 145.) No other claims are asserted against PHS. (Id.) Therefore, Defendants argue that because Plaintiff has failed to allege any personal involvement of the individual Defendants and appears to assert liability against PHS premised upon vicarious liability or under a theory of respondeat superior, these Defendants should be dismissed. (Id.)

As to the individual medical Defendants Meyers, Davis, and Bohinski, the amended complaint contains no factual averments indicating how these Defendants violated the law or injured Plaintiff. Accordingly, because the amended complaint contains no allegations against these Defendants, the Court will grant their motion and dismiss Defendants Chris Meyers, Stanley Bohinski and Brian Davis from this action with prejudice. See Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case); see also McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (providing that where a complaint contains no allegations indicting how the defendant violated or injured the plaintiff, a motion to dismiss the complaint should be granted) (case and citation omitted).

With regard to PHS, liability against a private company cannot be premised on a theory of respondeat superior or vicarious liability. See Monell v. N.Y. City Dep't. of Soc. Servs., 436

U.S. 658, 691 (1978). "[A]lthough a private corporation offering medical services cannot be held liable for an alleged § 1983 violation under a theory of <u>respondeat</u> <u>superior</u>, it can be held liable for a policy or custom that demonstrates deliberate indifference." <u>Francis v. Carroll</u>, 659 F. Supp. 2d 619, 625–26 (D. Del. 2009) (internal quotation marks omitted). Indeed, a private corporation like PHS may be held liable under Section 1983 if, while acting under color of state law, it knew of and acquiesced in the deprivation of the plaintiff's constitutional rights. <u>Carter v. Pa. Dep't of Corr.</u>, No. 08-0279, 2008 WL 5250433, at *6 (E.D. Pa. Dec. 17, 2008) (citations omitted).

To prevail on a Section 1983 claim against PHS, Plaintiff must demonstrate that PHS established and maintained a relevant policy or custom that directly caused the constitutional violation for which Plaintiff seeks relief. <u>Id.</u> at *7 (explaining that a private corporation, as part of its cost-saving policy "may be held liable for § 1983 constitutional violations if, while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a plaintiff's rights"); <u>see</u> <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (applying <u>Monell</u> to a private company providing medical services to inmates); <u>Miller v. City of Phila.</u>, No. CIV. A. 96-3578, 1996 WL 683827, at *3-*4 (E.D. Pa. Nov. 25, 1996) (providing that the plaintiff must show that the corporation, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm") (internal citations omitted);

Here, a review of the amended complaint reveals no allegations of a relevant corporate policy, practice or custom attributable to PHS. Accordingly, the Court will grant Defendant PHS' motion, and dismiss Defendant PHS from this action with prejudice.

### B. Defendants MHM Services, Inc. and Dr. Jane Jesse's Motion to Dismiss

Defendants MHM Services, Inc. ("MHM") and Dr. Jane Jesse have also filed a motion to dismiss (Doc. No. 155), and brief in support (Doc. No. 156). Their reasons mirror those previously developed by Defendants PHS, Chris Meyers, Stanley Bohinski, and Brian Davis. Specifically, the amended complaint contains no mention of or allegations against Dr. Jane Jesse. As for Defendant MHM, the amended complaint's only mention of it is MHM's identification in the list of Defendants stating its address and a paragraph contending that MHM might have employed two other named Defendants.[3] (Doc. No. 156.) For the same reasons set forth in section III. A, <u>supra</u>, the Court will grant Defendants Dr. Jane Jesse and MHM's motion, and dismiss them from this action with prejudice.

### C. Defendants Luzerne County District Attorney's Office, David Pedri and Jacqueline Musto-Carroll's ("Luzerne County DA Defendants") Motion to Dismiss

The Luzerne County DA Defendants have also filed a motion to dismiss (Doc. No. 148), and brief in support (Doc. No. 153). They contend that the only allegation set forth against them in the amended complaint is one paragraph which provides that these Defendants, "as part of a municipal policy, practice or custom … criminally charged prisoners at Dallas to conceal abuse and discriminate against socially weak persons in violation of Title 18 § 241-242." (Doc. No. 153 at 2, citing Doc. No. 143 ¶ 74.) Accordingly, the Luzerne County DA Defendants contend that Plaintiff's amended complaint is in violation of Federal Rule of Civil Procedure 8(a) in that Plaintiff offers nothing more than conjecture that these Defendants conspired against individuals incarcerated at SCI-Dallas. (Doc. No. 153 at 8.) Additionally, the moving Defendants contend that Plaintiff has also failed to state a claim upon which relief can be granted for Plaintiff's

---

[3] The two other named Defendants are Nurse Patty and Kevin Miskell, who already have been terminated from this case, as indicated on the docket.

failure to allege any personal involvement on behalf of the moving Defendants, or provide reference to the particular prosecution that Plaintiff alleges was fabricated. (Id. at 9-10.)

In his brief in opposition, Plaintiff counters that these moving Defendants "served as active participants in the DOC's known practice of criminally charging SCI-Dallas prisoners to conceal official misconduct." (Doc. No. 166 at 22.) In a declaration attached to his brief in opposition as Exhibit A, Plaintiff provides that he, along with five other prisoners, were criminally charged with riot which was ultimately dismissed at a criminal trial.[4] (Doc. No. 166-1 at 14.) While Plaintiff declares that he has attached the purported criminal complaints as an exhibit, no such exhibit is listed in the record.[5] (Id.) Plaintiff contends that in addition to paragraph 74 of his amended complaint, he has also alleged that the moving Defendants conspired to "[c]onceal the abuse and retaliation by lodging fabricated criminal charges against

---

[4] While moving Defendants do not object to Plaintiff's apparent attempt to supplement his factual allegations to his amended complaint via his brief in opposition, the Court notes that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. Pa. ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1981) (citation omitted). Also, it is clear that Plaintiff's declaration does contain several factual allegations which are not contained in his complaint. "The United States Court of Appeals for the Third Circuit has stated that an affidavit filed in opposition to a pending motion to dismiss 'clearly comprised a matter outside the pleading.'" Steinagel v. Valley Oral Surgery, Civ. No. 12-CV-05645, 2013 WL 5429269, *5 (E.D. Pa. Sept. 30, 2013) (citing Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989)). However, as set forth below, to the extent the declaration contains matters of public record, the Court may consider the same. See Del. Nation v. Pa., 446 F.3d 410, 413 n.2 (3d Cir. 2006).

[5] Through the publicly available records, the Court was able to access the criminal docket sheet of the Luzerne County Court of Common Pleas in the case of Commonwealth v. Jacobs, CP-40-CR-3551-2010, which reflects that Plaintiff was charged under 18 Pa. C.S.A. § 5501 §§ 2, Riot, resulting in a mistrial, and subsequently, an order was issued granting a motion to dismiss the charges. https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-40-CR-0003551-2010. The Court may take judicial notice of this document as it is part of the public record. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials.").

Plaintiff which Plaintiff was ultimately exonerated of at trial."[6]  (Doc. No. 166 at 24, citing Doc. No. 143 ¶ 73.)

The Court agrees with moving Defendants that Plaintiff has failed to provide a "short and plain statement of the claim showing that the pleader is entitled to relief,"  Fed. R. Civ. P. 8(a), as well as failed to state a claim upon which relief can be granted.  The only allegations set forth against moving Defendants are found in paragraphs 73 and 74 of Plaintiff's amended complaint. (Doc. No. 143 ¶¶ 72, 73.)  In those paragraphs, Plaintiff alleges that Defendants Pedri, Wilson, and Musto-Carroll conspired with other Defendants to conceal the abuse and retaliation at SCI-Dallas, by lodging fabricated criminal charges against Plaintiff, and that the moving Defendants criminally charged prisoners at Dallas to conceal abuse and discriminate against socially weak persons.  (Id.)  Plaintiff does not provide any further allegations in his amended complaint as to what "fabricated criminal charges" were lodged against him.

In reviewing the adequacy of the amended complaint, Federal Rule of Civil Procedure 8(f) requires the Court to construe the pleading "so as to do substantial justice."  Quality Mercury, Inc. v. Ford Motor Co., 542 F.2d 466 (8th Cir. 1976), cert. denied, 433 U.S. 914 (1977).  However, the notion of "substantial justice" must be balanced against the countervailing doctrine of "fair notice."  See, e.g., Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7, 747 F.2d 1195, 1198 (8th Cir. 1984).  The Court can only infer that Plaintiff is referring to the riot charge.  However, Plaintiff alleges that there were criminal **charges** fabricated against him; in other words, more than one charge.  Plaintiff, however, provides no allegations as to what other charges, other than the riot charge, were allegedly fabricated.  Accordingly, the Court finds that Plaintiff has failed to comply with Federal Rule of Civil Procedure 8(a), and has also failed to

---

[6] Again, it appears that Plaintiff alleges that the riot charge was fabricated.

state a claim upon which relief can be granted, to the extent Plaintiff is alleging fabricated charges other than the riot charge.

As to the alleged fabrication of the riot charge, the Court construes this allegation as one sounding in malicious prosecution, as Plaintiff alleges that these Defendants lodged "fabricated criminal charges against Plaintiff which Plaintiff was ultimately exonerated of at trial."  (Doc. No. 143 ¶ 73.)  It is well-settled that "[t]o prove malicious prosecution  ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).

Plaintiff's amended complaint fails to allege that the Luzerne County criminal proceeding was initiated without probable cause, and therefore, fails to state a claim upon which relief can be granted.  Here, the Luzerne County criminal docket sheet reveals that there was an initial independent judicial finding by a magisterial district judge that probable cause existed to charge Plaintiff with rioting.   Commonwealth v. Jacobs, CP-40-CR-3551-2010.  Moreover, the docket sheet shows that the riot charge was bound over to court for trial.  Id.  Because the publicly available records demonstrate sufficient probable cause to charge Plaintiff with rioting, Plaintiff necessarily fails to state a claim for malicious prosecution, as he has failed to set forth a requisite element of a malicious prosecution claim.  See Fisher v. Matthews, 792 F. Supp. 2d 745, 778, 781 (M.D. Pa. 2011) (citing Com. v. Hendricks, 927 A.2d 289, 2007 WL 1732578 (Pa. Super. 2007) (providing that because the plaintiff's charges were bound over for court and trial, despite

18

the subsequent dismissal and withdrawal of the charges, "there was some initial independent judicial finding that probable cause existed" by a magisterial district judge, that "sufficiently established both the commission of a crime and that the accused is probably the perpetrator")). Plaintiff will not be granted leave to amend this claim because the Court finds that any amendment would be futile in light of the publicly available records cited above. Accordingly, the Court will grant Defendants District Attorney's Office, David Pedri, and Jacqeuline Musto-Carroll's motion, and will dismiss these Defendants from this action with prejudice.[7]

### D. DOC's Motion to Dismiss

The remaining claims in this action are asserted against the DOC Defendants. The DOC Defendants have filed a partial motion to dismiss (Doc. No. 161), and brief in support (Doc. No. 162). In their motion, the DOC Defendants argue that: (1) the amended complaint should either be dismissed or stricken for its failure to comply with Federal Rules of Civil Procedure 8 and 20; (2) the DOC Defendants against whom no allegations are made should be dismissed; (3) Plaintiff's claims related to the grievance process should be dismissed; (4) Plaintiff fails to state any claim related to verbal threats and abuse; (5) Plaintiff's claims related to placement on the RRL should be dismissed; and (6) Plaintiff's conspiracy claims should be dismissed. (Doc. No. 162.) The Court will address each argument in turn.

### 1. Federal Rules of Civil Procedure 8 and 20

The DOC Defendants first advance the argument that Plaintiff's amended complaint "contains allegations of distinct acts committed by disparate parties at widely different times and places [and] likely runs afoul of Federal Rules of Civil Procedure 8 and 20." (Doc. No. 162 at 3.) Specifically, the DOC Defendants argue that the "range of allegations advanced by Plaintiff

---

[7] Defendant Christopher J. Wilson will also be dismissed from this action with prejudice, for the same reasons applicable to Plaintiff's claims against the Luzerne County DA Defendants.

involve different acts, and distinct claims, allegedly committed by different and disparate actors. There is no legitimate single, coherent legal, logical, topical or temporal connection between these various claims." (Id.)  As such, the DOC Defendants argue that the joinder of these claims is inappropriate under Rule 20.   Moreover, the DOC Defendants argue that Plaintiff is in violation of the Prison Litigation Reform Act ("PLRA"), in that Plaintiff has "effectively avoided incurring filing fees on other actions that have been inappropriately combined."  (Id. at 5.)  The DOC Defendants request that the amended complaint be dismissed or stricken, and Plaintiff be directed to amend his pleading to reflect a single cause of action and to initiate separate causes of action for those claims and defendants which are unrelated.  (Id.)

### a.    Federal Rule of Civil Procedure 20

Federal Rule of Civil Procedure 20 provides that:

> Persons … may be joined in one action as defendants if:
>
> (A)     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B)     any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20.  Rule 20(a) is designed to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  See Mosley v. C.M. Corp., 497 F.2d 1330, 1332 (8th Cir. 1974).  The decision as to whether permissive joinder should be permitted is within the Court's sound discretion.  Id.  In deciding whether to join parties, the Court should use a liberal standard.  Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 160 (S.D. N.Y. 2009).  The Supreme Court in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), stated:

> [u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.

Id. at 724. A case-by-case analysis should be made by the Court in determining if a plaintiff's claims arise out of the same transaction or occurrence. Mosely, 497 F.2d at 1333. The Court should look to the "logical relationship" of the transactions involved. Id. (quotation omitted). In determining whether a "logical relationship" exists between claims, the Third Circuit in Xerox Corp. v. SCM Corp., 576 F.2d 1057 (3d Cir.1978), stated that:

> a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.

Id. at 1059. Courts in this Circuit have found that "the same series of transactions or occurrences prerequisite under Rule 20 essentially consumes the second requirement that there arise a question of law or fact common to all joined parties." Norwood Co. v. RLI Ins. Co., Civ. No. 01-6153, 2002 WL 523946 at *3 (E.D. Pa. Apr. 4. 2002).

While Plaintiff's amended complaint names over one hundred defendants and contains numerous claims concerning defendants who are employed at three correctional facilities in two different federal judicial districts, the Court disagrees with DOC Defendants' contention that "[t]here is no legitimate single, coherent legal, logical, topical or temporal connection between" the various claims set forth in Plaintiff's amended complaint. (Doc. No. 162 at 3.) Plaintiff's amended complaint sets forth a vast conspiracy among the DOC Defendants to retaliate against him for receiving a $185,000 jury verdict against the DOC in an earlier civil rights lawsuit. Plaintiff alleges a conspiracy of retaliation that was implemented by the supervisory DOC Defendants and disseminated to each correctional facility where Plaintiff was housed. (Doc. No. 143.) While many of Plaintiff's claims appear to be separate incidents occurring at different

times and involving different Defendants, Plaintiff weaves these allegations together in support of his civil rights conspiracy by alleging a joint and concerted effort by Defendants to retaliate against him.  But see Tele-Media Co. of Western Conn. v. Antidormi, 179 F.R.D. 75 (D. Conn. 1998) ("[i]n the absence of any claim that the defendants conspired or acted jointly, the same transaction requirement of Rule 20, even when read as broadly as possible, is plainly not satisfied.").

Here, Plaintiff has alleged that the DOC Defendants conspired or acted jointly to retaliate against him for winning a $185,000 jury verdict against the DOC.  While Plaintiff alleges various and distinct incidents of retaliation from numerous Defendants at three different correctional institutions, Plaintiff connects these distinct incidents of retaliation together by alleging that they were all in furtherance of this grand conspiracy set against Plaintiff. Moreover, Plaintiff, as a pro se litigant, is afforded the benefit of a liberal construction of his pleadings.  See, e.g., Higgins v. Beyer, 292 F.3d 683, 686 (3d Cir. 2002) ("pro se complaint, when liberally construed, stated sufficient facts to state a cause of action.").  Accordingly, the Court will deny the DOC Defendants' motion to dismiss on the basis that the amended complaint fails to comply with Federal Rule of Civil Procedure 20.

### b.      Federal Rule of Civil Procedure 8

As initially set forth by this Court, to avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct:  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)).  When evaluating the plausibility of a complaint, the court accepts as true all factual

allegations and all reasonable inferences that can be drawn from those allegations, viewed in the

light most favorable to the plaintiff.  See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust

Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the court must not accept legal conclusions

as true, and "a formulaic recitation of the elements of a cause of action" will not survive a

motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  Accordingly, the

following claims will be dismissed with prejudice for Plaintiff's failure to conform to Federal

Rule of Civil Procedure 8, as well as his failure to state a claim upon which relief can be granted.

### i.    Defamation Claim

Plaintiff alleges that Defendants McKeown, Mahally, Cicerchia, Leskowsky, Walsh, and

MacIntyre published and circulated a defamatory claim that he assaulted a prison guard and tried

to hang himself.  (Doc. 143 ¶ 63.)  Because DOC corrections officers are protected from

intentional tort claims, such as defamation, Plaintiff's defamation claim is not cognizable under

42 U.S.C. § 1983.  See Miller v. Trometter, Civ. No. 4:11-CV-811, 2012 WL 5933015, at *5

(M.D. Pa. Nov. 27, 2012); Paul v. Davis, 424 U.S. 693, 701 (1976).  Indeed, "[p]ursuant to

section 11 of Article I of the Constitution of Pennsylvania, … the Commonwealth, and its

officials and employees acting within the scope of their duties, shall continue to enjoy sovereign

immunity and official immunity and remain immune form suit except as the General Assembly

shall specifically waive the immunity."  1 Pa.C.S. § 2310.  "The Pennsylvania legislature has not

chosen to waive this immunity for intentional torts."  Wicker v. Shannon, Civ. No. 3:CV-09-

1629, 2010 WL 3812351, at *9 (M.D. Pa. Sept. 21, 2010) (citing 42 Pa.C.S.A. § 8522).

"Defamation is a state intentional tort."  Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa.

Super. Ct. 2008); see Ortiz v. Alvarez, Civ. No. 07-1669, 2007 WL 1202724 (D. N.J. Apr. 20, 2007) (dismissing § 1983 suit alleging defamation).  Moreover, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999).  Accordingly, the Court will dismiss this claim and Defendants McKeown, Mahally, Cicerchia, and MacIntyre from this action with prejudice.[8]

### ii. Eighth Amendment: Denial of Food, Shower, Exercise

Plaintiff alleges throughout his amended complaint that DOC Defendants Robowleski, Bliech, Sgt. Buck, Sgt. Brozowski, Hoover, Davis, Leonard, Piepzowski, Rudon, Ellett, McMillian, Dascani, Belles, Emerich, and Goodwin denied him food, showers, and exercise. (Doc. No. 143 ¶¶ 38, 48, 64, 79, and 80).  A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference.  Id. at 837.

Plaintiff does not specifically allege the amount of times he was denied food, showers, or exercise.  In liberally construing his amended complaint, the Court infers that Plaintiff alleges that he was denied food about five times (Doc. No. 143 ¶¶ 38, 64, 79, and 80), showers three times (Id. ¶ 38, 48, 80), and exercise twice (Id. ¶¶ 38, 80).  The Court finds that these few instances do not establish an Eighth Amendment violation.  See Miller, 2012 WL 5933015, at

---

[8] Defendants Walsh and Leskowsky are implicated in other claims and will not be dismissed.

24

*10 (finding plaintiff's allegations that he was denied breakfast and lunch on six days, showers on twenty eight occasions during the months of September and October, and exercise thirty four times in September and October was insufficient to support an Eighth Amendment claim). Moreover, Plaintiff does not allege that the lack of exercise time or access to equipment threatened his health and, therefore, does not state a constitutional violation.  Id.; Gattis v. Phelps, 344 F. App'x 801, 805 (3d Cir. 2009) (determining that the prisoner was not guaranteed outdoor exercise at all times and the limitation of exercise to three days per week was insufficiently serious to implicate the Eighth Amendment) (internal citation and citing case omitted).

Accordingly, the Court will dismiss these claims and the following DOC Defendants from this action with prejudice: Robowleski, Sgt. Brozowski, Hoover, Leonard, Piepzowski, Rudon, Ellett, McMillian, Dascani, Belles, Emerich, Kepner, and Goodwin.[9]

### iii.    Strip Searches

Plaintiff also alleges that on September 10, 2010, he was subjected to a full strip search by Defendants Emerich and Belles prior to leaving his cell to get a haircut, and then subjected to another strip search on his return from his haircut.  (Doc. No. 143 ¶ 87.)  Plaintiff further alleges that Defendants Varner, Shipe, Varano, and Tracy Williams condoned this "sexual abuse," i.e., the strip searches.  (Id. ¶ 89.)  A prisoner's challenge to a strip search may be cognizable under Section 1983 through the Fourth or Eighth Amendments.  See Seymore/Jones v. Spratts, Civ. No. 90-56, 1990 U.S. Dist. LEXIS 193, at *4 (E.D. Pa. Jan. 10, 1990).  To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable.  See Payton v. Vaughn, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992).  The Eighth Amendment may be

_____

[9] DOC Defendants Sgts. Buck and Bliech are implicated in other claims and will not be dismissed from this action.

implicated where a prisoner alleges that the strip search was conducted in a physically abusive manner.  See Jordan v. Cicchi, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction.").

Here, the amended complaint alleges that on two occasions, Plaintiff was subjected to a strip search which he characterizes as "sexual abuse."  (Doc. No. 143 ¶¶ 87, 89.)  Plaintiff has failed to allege facts in support of a constitutional violation in the frequency of the strip searches. The Third Circuit has held that prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the RHU, if performed in a reasonable manner. Millhouse v. Arbasak, 373 F. App'x 135, 137 (3d Cir. 2010) (citing Bell v. Wolfish, 441 U.S. 520, 559-60 (1979)).  "When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return."  Jones v. Luzerne Cty. Corr. Facility, Civ. No. 3:10-CV-0359, 2010 U.S. Dist. LEXIS 86430, at *22-23 (M.D. Pa. Aug. 23, 2010).  Moreover, strip searches can be conducted by prison officials without probable cause provided that they are conducted in a reasonable manner.  Id. at *22.

Because Plaintiff has failed to allege that the searches were performed in a physically abusive manner, Plaintiff has failed to allege a valid Fourth or Eighth Amendment violation based upon those strip searches.  Accordingly, the Court will dismiss these claims and Defendants Belles, Emerich, Shipe, and Tracy Williams from this action with prejudice.

### 2.       Defendants Against Whom No Allegations Are Made

The DOC Defendants next argue that Plaintiff's amended complaint fails to make any allegations against the following Defendants in the body of the amended complaint: Marc Goldberg, Chief Counsel, Bath, Lt. Poper, James Wilk, Philip Walters, Thomas Harrison, Guard Provow, Guard Depiero, Robert Care, Lt. Devers, Bradley Scott, Lt. James Eveland, Capt. Miller, and Lt. Stitler. (Doc. No. 162 at 6.) In Plaintiff's brief in opposition, Plaintiff consents to the dismissal of these named Defendants with the exception of Defendant Miller, who is, in fact, identified in the body of the complaint at paragraph 41; Defendant Goldberg, because Plaintiff "believes [he] is one of [the] John Does"; and Guard Provow, who Plaintiff "believes was part of the masked group of men who cell-extracted [him] on April 29, 2010." (Doc. No. 166 at 29.)

The Court will grant in part the DOC Defendants' motion to dismiss Defendants Chief Counsel, Bath, Lt. Poper, James Wilk, Philip Walters, Thomas Harrison, Guard Depiero, Robert Care, Lt. Devers, Bradley Scott, Lt. James Eveland, and Lt. Stitler. See Whittington v. Vaughn, 289 F. Supp. 2d 621, 628 (E.D. Pa. 2003) ("The omission of a defendant's name from the material allegations of a complaint justifies the dismissal of the complaint against that defendant … [and] where there is no indication in the pleadings that a defendant played a role in the challenged conduct, the claims against that defendant are subject to dismissal.").[10] The Court will deny the motion as it pertains to Defendant Miller, as the amended complaint contains

_____

[10] The Court will also dismiss Defendants Manchez, Scromski, Ellers, Kopec, Pahlidal, Zielen, Barrier, and Keins from this action with prejudice. Plaintiff provides only a vague and conclusory allegation that Defendant Manchez "approved of Defendant Leggett's agenda…." (Doc. No. 143 ¶ 18.) Plaintiff provides no other averment of what specifically Manchez allegedly "approved." Additionally, while listed as Defendants on the docket, Plaintiff advances no allegations against Defendants Scromski, Ellers, Kopec, Pahlidal, Zielen, Barrier, or Keins. The Court finds that this form of pleading is plainly inadequate under Federal Rule of Civil Procedure 8 and Iqbal, and justifies dismissal of these Defendants from this action. See Whittington, 289 F. Supp. 2d at 628.

allegations against him at paragraphs 40 and 41. (Doc. No. 143.) With regard to Defendants

Goldberg and Provow, the Court will deny the motion without prejudice to Defendants' renewal

of such a motion if discovery in this matter fails to identify either Defendant Goldberg or Provow

as appropriate defendants.

### 3. Grievance Process Claims

The DOC Defendants next argue that any claim advanced by Plaintiff relating to the

handling/lack of handling of Plaintiff's grievances fails to set forth a constitutional claim. (Doc.

No. 162 at 6.) Inmates do not have a constitutional right to prison grievance procedures. Lions

v. Wetzel, Civ. No. 1:13-CV-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing

of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the

response to an inmate's grievance, does not establish the involvement of officials and

administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F.

App'x. 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these

defendants and any additional defendants who were sued based on their failure to take corrective

action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F.

App'x. 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials

responded inappropriately to inmate's later-filed grievances do not establish the involvement of

those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa.

Dep't of Corr., No. CIV. 4:CV–06–1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006)

("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by

failing to follow proper procedure or take corrective action following his submission of an

institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947

(E.D. Pa. 1997) (noting that prison officials' failure to respond to inmate's grievance does not

state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (Supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

The Court notes that Plaintiff provides no retort to the DOC Defendants' argument that he has failed to state a claim related to the handling of his grievances. The Court acknowledges that in accordance with the above law, any claim asserted by Plaintiff in an attempt to establish liability against the DOC Defendants based solely upon the substance of their respective responses, or lack thereof, to his grievances or administrative appeals does not support a constitutional due process claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Brooks, 167 F. App'x. at 925; Ramos, 2006 WL 2129148, at *3. Accordingly, the Court will grant the DOC Defendants' motion to dismiss these claims with prejudice.[11] This Court's review of Plaintiff's amended complaint reveals the following DOC Defendants appearing be sued based only on their failure to take corrective action regarding grievances or investigations: Defendants L.S. Kerns-Barr, Keller, Delbasco, Demming, Brittain, Mooney, McKeown, Mahally, Goyne, Rovinski, Starzinski, and S. Tubble. These Defendants will be dismissed with prejudice.

### 4. Verbal Threat Claims

[11] While the Court is dismissing Plaintiff's claims related to the handling of his grievances, Plaintiff's claims of retaliation because of his filing of grievances, a constitutionally protected activity, survive the motions to dismiss. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (The filing of an administrative grievance and a lawsuit are constitutionally protected conduct).

The DOC Defendants next argue that Plaintiff's claims that he was threatened or verbally harassed fail to set forth a constitutional violation. (Doc. No. 162 at 7, 8.) In reviewing the amended complaint, the Court notes three allegations of verbal abuse. The first instance is found at paragraph 50 of the amended complaint and asserts that Defendants Elmore and Mccoy "loudly taunted Plaintiff" and called him a "snitch." (Doc. No. 143 ¶ 50.) Plaintiff also alleges that they assaulted him. (Id.) The second instance is found at paragraph 69 wherein Plaintiff alleges that Defendant Silvette made sexual/derogatory remarks to him. (Id. ¶ 69.) The final allegation is found at paragraph 82 wherein Plaintiff alleges that Defendants Goodwin and Kerner stated to Plaintiff "you're in real KKK country we will kill you." (Id. ¶ 82.)

"Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." Brown v. Hamilton Police Dep't, No. CIV.A. 13-260 MAS, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013) aff'd sub nom. Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J., 547 F. App'x 96 (3d Cir. 2013); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."). In addition, mere threatening language and gestures of a custodial officer are not constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986) ("Verbal abuse is not a civil rights violation."), aff'd, 800 F.2d 1130 (3d Cir. 1986).

Plaintiff's allegations of verbal abuse/threats fail to set forth a viable civil rights claim. While Plaintiff makes a vague assertion that Defendants Elmore and Mccoy assaulted him in addition to verbally abusing him, he does not allege that he suffered any injury. Accordingly, as Plaintiff's allegations of verbal harassment by Defendants Elmore, Mccoy, Goodwin, Kerner and Slivette do not rise to the level of a viable civil rights claim, the Court will dismiss such claims

against these Defendants with prejudice. Because Defendant Silvette is not implicated in any other claim in the amended complaint, he will be dismissed from this action with prejudice.

### 5. Placement on Restricted Release List

The DOC Defendants next argue that Plaintiff's condition of confinement claims related to his placement in administrative and disciplinary custody do not state an actionable claim. (Doc. No. 162 at 8.) It is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. Moody v. Daggett, 429 U.S. 78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." Id.

The Third Circuit has previously held that placement on the RRL does not deprive an inmate of a liberty interest triggering due-process protection. See Bowen v. Ryan, 248 F. App'x 302, 304-05 (3d Cir. 2007) ("Appellant's claim that he was placed on the [RRL] without due process as properly dismissed. Placement on this list did not deprive Bowen of his liberty, privileges, or any other constitutionally protected liberty interest."). See Leaphart v. Palakovich, No. 3:11-CV-1333, 2012 WL 175426, *3 n. 4 (M.D. Pa. Jan. 20, 2012); Sandin v Conner, 515 U.S. 472, 483-84 (1995). Moreover, to the extent that Plaintiff's amended complaint challenges the process by which he was initially confined in administrative custody, the Court finds that such a claim fails to allege the lack of an opportunity to be heard or other procedural shortcomings that would implicate Plaintiff's due process rights. See Bowen, 248 F. App'x at 304 (stating that the procedures provided by the DOC satisfy the minimal constitutional

standards for due process and rejecting plaintiff's conclusory allegations that the periodic reviews were rote or meaningless).

The Court also agrees with the DOC Defendants that, to the extent Plaintiff's amended complaint alleges confinement in the RHU while on the RRL deprived him of rehabilitative opportunities, such a claim is without merit. It is well-established that those individuals serving criminal sentences have no constitutional right to rehabilitation while in prison. Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982); see also Newman v. Alabama, 559 F.2d 283, 287 (5th Cir. 1977), rev'd on other grounds, Alabama v. Pugh, 438 U.S. 781 (1978). Many courts have held that prisoners have no constitutional right to various rehabilitative programs including drug treatment, employment, or other rehabilitation, education or training programs while in prison. See Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995); Abdul–Akbar v. Dept. of Corrections, et al., 910 F. Supp. 986, 1002 (D. Del. 1995).

The DOC Defendants also argue that Plaintiff's deliberate indifference claims related to his placement on the RRL fail because Plaintiff provides only conclusory statements that he suffers from mental health disorders that are exacerbated by placement on the RRL, and such conclusory allegations are insufficient to establish a plausible entitlement to relief. The Court agrees. Plaintiff's allegation that Defendants Johnson and Beard approved his placement on the RRL with deliberate indifference to the substantial risk of Plaintiff's mental illness is wholly conclusory and without an iota of support. This form of pleading runs afoul of Rule 8. Plaintiff does not present any facts that, accepted as true, demonstrate a plausible right to relief. Fed. R. Civ. P. 8(a). Accordingly, the Court will dismiss Plaintiff's deliberate indifference claims relating to his placement on the RRL with prejudice. Therefore, the Court will dismiss DOC Defendants Lackey, Link, Abrams, Galluci, and Hughes from this action with prejudice.

### 6. Conspiracy Claims

The DOC Defendants' final argument is that Plaintiff's conspiracy claims are conclusory and should be dismissed on that basis, or alternatively, Plaintiff should be required to plead his factual claims with more specificity in another amended complaint. (Doc. No. 162.) As set forth above, Plaintiff alleges a wide-ranging conspiracy from the supervisory DOC Defendants to the DOC Defendants at SCI-Fayette, SCI-Dallas, and SCI-Coal Township. Specifically, Plaintiff alleges that: (1) Wetzel, Johnson, Moore-Smeal, and Varner identified Plaintiff as a threat to the prison establishment and encouraged retaliation after Plaintiff was awarded a $185,000 jury verdict; (2) Plaintiff was demoted from his privileged status after returning from his civil trial as part of the campaign launched by Defendants Beard, Johnson, Moore-Smeal, and Varner; (3) Defendants Nickelson and Varner conspired to deny Plaintiff due process and to retaliate against Plaintiff for winning his lawsuit; (4) Defendants Trempus, Leggett and Vojacek, on April 3, 2009, entered into an agreement to defame Plaintiff; (5) Defendants House and Kushner entered into a conspiracy with Leggett on April 12, 2009 to undermine Plaintiff's grievances; (6) Defendants Vojacek, Leggett and Collins acted in concert to further Beard, Johnson, Moore-Smeal, Varner, and Coleman's scheme to retaliate against Plaintiff, by pressuring him to accept a settlement on April 23, 2009; (7) Defendants Vojacek, Collins, and Leggett conspired to issue Plaintiff fabricated misconduct reports, and along with Defendant Zaken, further conspired to seize Plaintiff's legal mail; (8) Defendants Beard, Coleman, Johnson, and Moore-Smeal intended that this "campaign of harassment and retaliation" continue when Plaintiff was transferred to SCI-Dallas; (9) Defendants Bliech, Robowleski, and Sgt. Buck conspired to deny Plaintiff food, showers, and outside exercise; (10) with approval of Defendants Beard, Wetzel, Klopotoski, Moore-Smeal, and Walsh, Defendants Fedor, Martin, Patterson, and

Zakarauckus conspired to sabotage Plaintiff's ability to defend his $185,000 verdict and routinely stole Plaintiff's mail, reopened it, read it, photocopied it, destroyed it, and/or refused to process it; (11) with the authorization of Defendants Mooney, Walsh, Wetzel and Beard, Defendants Bliech, Mosier, and Buck orchestrated an attack on Plaintiff; (12) Defendant Walsh and/or Wetzel communicated with Defendant Varano on April 29, 2010, and requested that Defendant Varano accept Plaintiff at SCI-Coal Township, with the understanding that Plaintiff would be targeted for winning his lawsuit; and (13) on May 19, 2010, Defendant Varano reinforced Defendants Beard, Wetzel, Coleman, Walsh, and Moore-Smeal's threat/agenda that if Plaintiff did not cease his litigation activity, the abuse would continue to "deteriorate." (Doc. No. 143.)

"To state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Eichelman v. Lancaster Cnty., 510 F. Supp. 2d 377, 392 (citing Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)). "To demonstrate the existence of a conspiracy under section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.' " Royster v. Beard, 308 F. App'x 576, 579 (3d Cir. 2009) (quoting Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 7000 (3d Cir. 1993), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003)). Thus, a claim for conspiracy under Section 1983 requires the plaintiff to make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D. Pa.

1992) (citing <u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814 (3d Cir. 1974)).  In the Third

Circuit, "a civil rights conspiracy claim is sufficiently alleged if the complaint details the

following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the

conduct, and (3) the identity of the officials responsible for the conduct." <u>Oatess v.</u>

<u>Sobolevitch</u>, 914 F.2d 428, 432 n. 8 (3d Cir. 1990).

"[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule

12(b)(6) dismissal.'"  <u>Thakur v. Tan</u>, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting <u>Capogrosso</u>

<u>v. Supreme Ct. of N.J.</u>, 588 F.3d 180, 184 (3d Cir. 2009).  In other words, Plaintiff must allege

some factual basis to support the existence of the elements of conspiracy, namely, the existence

of an agreement and concerted action.  <u>Id.</u> (internal citation omitted).  It is not enough that the

end result of the parties' independent conduct caused the plaintiff harm or even that the alleged

perpetrators of the harm acted in conscious parallelism.  <u>Savage v. Judge</u>, 644 F. Supp. 2d 550,

561 (E.D. Pa. 2009).

In reviewing the amended complaint, the Court finds that Plaintiff has "described the

persons responsible, the conduct, approximate timing, and motive of the conspiracy sufficient for

a factfinder to infer the existence of a conspiratorial agreement."  <u>Walker v. Hensley</u>, No. 08-

0685, 2009 WL 5064357, at *9 (E.D. Pa. Dec. 23, 2009) (citing <u>Rose v. Bartle</u>, 871 F.2d 331,

366 n. 60 (3d Cir. 1989)).  Plaintiff has alleged facts "tending to show a 'meeting of

conspiratorial minds'" between the DOC Defendants.  Specifically, Plaintiff's allegations

indicative of a meeting of conspiratorial minds include: (1) the persons responsible - the above

outlined Defendants; (2) the conduct - retaliation, violation of Plaintiff's First Amendment, and

destruction of Plaintiff's property; (3) the approximate timing of the events, which occurred right

after Plaintiff secured a $185,000 jury verdict against the DOC and continuing throughout his

transfers from SCI-Fayette, SCI-Dallas, and SCI-Coal Township; and (4) the Defendants'
alleged motive, Plaintiff's jury verdict against the DOC. (Doc. No. 143.) The facts alleged by
Plaintiff suggest that Defendants were actuated by a common desire to punish Plaintiff for
winning his lawsuit. See Savage v. Judge, Civ. No. 05-2551, 2007 WL 29283, at *4 (E.D. Pa.
Jan. 2, 2007). While the facts alleged by Plaintiff are more extensive for some of the DOC
Defendants than for others, the facts described in the amended complaint permit an inference that
the DOC Defendants agreed, at least tacitly, to violate Plaintiff's constitutional rights.

The Court is mindful that while these same allegations may be insufficient to state a
Section 1983 conspiracy claim if made by a represented party, Plaintiff, as a pro se litigant, is
afforded the benefit of a liberal construction of his pleadings. See, e.g., Higgins v. Beyer, 292
F.3d 683, 686 (3d Cir. 2002) ("pro se complaint, when liberally construed, stated sufficient facts
to state a cause of action"); Zilich v. Lucht, 981 F.2d 694, 694 (3d Cir. 1992) ("when, as in this
case, the plaintiff is a pro se litigant, we have a special obligation to construe his complaint
liberally"); United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 (3d Cir. 1979)
("prisoner's pro se complaint is held to a less stringent standard than formal pleadings drafted by
lawyers … [and is] sufficient to withstand dismissal at this state of the proceeding"); Real v.
Dunkle, Civ. No. 3:11-2071, 2012 WL 1392334, at *9, 10 (M.D. Pa. Apr. 23, 2012) (liberally
construing pro se plaintiff's pleading and allowing plaintiff to proceed on his § 1983 conspiracy
claim, retaliation claim, and denial of access to the courts claim). Accordingly, the Court will
deny the DOC Defendants' motion to dismiss the conspiracy claims.

IV.      CONCLUSION

For the foregoing reasons, the Court will grant Defendants PHS, Chris Meyers, Stanley
Bohinski, and Brian Davis' motion to dismiss (Doc. No. 144), Defendants District Attorney's

Office, David Pedri and Jacqueline Musto-Carroll's motion to dismiss (Doc. No. 148), and Defendants MHM Services, Inc., and Dr. Jane Jesse's motion to dismiss (Doc. No. 155), and these Defendants, as well as Defendant Christopher Wilson, will be dismissed from this action with prejudice. The Court will grant in part and deny in part the DOC Defendants' partial motion to dismiss (Doc. No. 161). The Court will grant the DOC Defendants' motion and dismiss with prejudice from this action Defendants Chief Counsel, Bath, Lt. Poper, James Wilk, Philip Walters, Thomas Harrison, Guard Depiero, Robert Care, Lt. Devers, Bradley Scott, Lt. James Eveland, Lt. Stitler, McKeown, Mahally, Cicerchia, MacIntyre, Robowleski, Sgt. Brozowski, Hoover, Leonard, Piepzowski, Rudon, Ellett, McMillian, Dascani, Belles, Emerich, Kepner, Goodwin, Shipe, Tracy Williams, Manchez, Scromski, L.S. Kerns-Barr, Keller, Delbasco, Demming, Brittain, Mooney, Goyne, Rovinski, Starzinski, Lackey, Link, Abrams, Galluci, Hughes, Silvette, Ellers, Kopec, Pahlidal, Zielen, Barrier, and Keins. To the extent that Plaintiff is making a free-standing constitutional claim of failure to respond to his grievances, the Court will grant the DOC Defendants' motion and dismiss this claim with prejudice. The Court will also dismiss with prejudice Plaintiff's claims of verbal harassment; defamation; Eighth Amendment claims for denial of food, showers, and exercise; and Eighth and Fourth Amendment claims relating to strip searches. Finally, the Court will also dismiss with prejudice Plaintiff's claims related to his placement on the RRL. The Court will deny the DOC Defendants' partial motion to dismiss in all other respects.

Accordingly, the Court's review indicates that the remaining claims in this action are: (1) retaliation; (2) access to the courts; (3) Eighth Amendment cruel and unusual punishment; (4) Eighth Amendment conditions of confinement; (5) fabrication of misconduct reports and due process violations in connection with disciplinary hearings; (6) Eighth Amendment food

tampering; and (7) conspiracy.  The Court will direct the DOC Defendants to file an answer to the remaining allegations of the amended complaint.  An appropriate Order follows.